**UNITED STATE DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| ELIZABETH MINTON, | : CIVIL ACTION NO: |
| Plaintiff, | : |
| v. | : |
| TEACHING LAB, | : |
| Defendant. | : |
| | : June 15, 2026 |

## COMPLAINT

## JURISDICTION AND VENUE

1.    This suit is brought pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. §12101 et seq.  The Complaint also contains supplemental state law claims arising out of the same case or controversy as the federal claims.

2.  This Court has original jurisdiction over the plaintiff's federal claims pursuant to 28 U.S.C. §§1331 and 1343.  With respect to the plaintiff's state law claims, this court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 in that those claims are so related to the federal claims in the action within the court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.  Venue is appropriate in the District of Connecticut pursuant to 28 U.S.C. §1391(c) because this is the district in which the events giving rise to the claims occurred.

4.  The plaintiff has in law and equity satisfied all of the administrative prerequisites necessary to maintain this action.

**PARTIES**

5.  The plaintiff, Elizabeth Minton, is a citizen of the United States, residing in Canton, Connecticut. At all times relevant to this complaint, the plaintiff has been an employee of the defendant as that term is defined by the ADA, 42 U.S.C. § 12102(2) and Connecticut Fair Employment Practices Act (CFEPA), C.G.S. §46a-51(9).

6.  At all relevant times, the plaintiff has been a qualified individual with a disability, and/or has been regarded as a person with a disability, as that term is defined by the ADA, 42 U.S.C. §12102(2). At all times relevant to this complaint, the plaintiff has been a person with a disability as that term is defined by CFEPA. She has been diagnosed with and received treatment for Attention Deficit Hyperactivity Disorder (ADHD), as well as peripheral neuropathy.

7.  At all times relevant to this complaint, the plaintiff is a qualified individual with a disability, capable of performing the essential duties of the positions at issue in this case either with or without accommodations.

8. The defendant, Teaching Lab, is a non-profit corporation, with a headquarters located in Washington, D.C. At all relevant times the defendant has been an employer within the meaning of the ADA, 42 U.S.C. §12111(5) and CEFPA, C.G.S. §46a-51(10), and §46a-60.

9.  The defendant has more than 100 employees.

**FACTS**

10.  The plaintiff began working for the defendant as a consultant in June, 2021. She began working as a regular employee in the position of Technology Specialist on or about January 6, 2022, and was promoted to Manager, Technology on or about August

1, 2022.

11. At all times relevant to this complaint, the plaintiff's job performance has been satisfactory or better and she was never disciplined prior to being discharged.

12.  The defendant's Chief Operating Officer (COO), HaMy Vu, her immediate supervisor, Vee Johnson, and the Chief People & Culture Officer (Head of HR), Andrea McDade, were all aware that the plaintiff had ADHD and/or that she was neurodivergent.

13.  On or about February 24, 2023, during a coaching session regarding the plaintiff's interactions with a coworker, Vu said: "Just because a person has ADHD doesn't mean they can be a jerk."

14. On the same day, the plaintiff reported Vu's comment to McDade and let her know that she found the comment to be offensive.

15.  On or about March 1, 2023, Vu gave the plaintiff a document titled "Employee Coaching & Counseling" expressing the need for "continuing work on her social skills in communications, including making her thinking, knowledge, and planning visible to others." This counseling related to the employee interaction referenced in Paragraph 13 above and reflected issues that had been discussed that were directly related to the plaintiff's disability.

16.  From about May 2023 through the end of her employment, the plaintiff was highly visible in her advocacy on behalf of neurodivergent workers, and advocated for the creation of an affinity group to help educate and support employees with disabilities like her own. The affinity group was eventually approved in about March of 2024.

17.  In about April of 2024, the plaintiff informed Johnson that a national supply

shortage was making it difficult for her to get her regular ADHD medication and that this would likely result in the plaintiff having to work unmedicated from time to time.

18. On or about April 22, 2024, during an in-person company retreat, the plaintiff identified herself as neurodivergent during an activity at which both Johnson and Vu were present.

19. On or about April 23, during the same retreat, the plaintiff chose to sit in the back of the room so as not to interrupt or distract anyone. When Vu came in she said "of course you are sitting in the back of the room." The plaintiff reported this comment to an HR representative on about May 3, 2024, because she viewed it as a microaggression related to her disability. The HR representative told the plaintiff that she could make a formal report, but that she did not believe anything would change and it might make the plaintiff's working life harder.

20. The plaintiff met with Johnson on May 3, 2024. During that conversation the plaintiff mentioned to Johnson that people need to be more cognizant of their calendar privacy settings because when the plaintiff had looked at Vu's calendar to find a time for them to meet, she could see a meeting on her calendar with Vu, McDade and a lawyer.

21. On or about May 8, 2024, the plaintiff met with HR representative Melissa Ramos to ask about medical leave because the plaintiff was going to need time off for surgery to address worsening symptoms related to her peripheral neuropathy, and requested FMLA forms. On the same day, the plaintiff let Johnson know that she was likely going to need to take a medical leave of absence.

22. At 8:30 a.m. on May 9, 2024, the plaintiff was informed that she was being required to attend a meeting with Johnson and McDade at 9:00 a.m. During that

meeting, the plaintiff was told that she was being placed on unpaid administrative leave while the respondent investigated potential violations of the Computer and Communications System Usage Policy, Misuse of Technology and Violation of Privacy. At that time she was provided with a document titled Administrative Leave Notice documenting the unpaid leave, but was provided with no other information.

23.  The plaintiff did not violate any of these policies.

24.  On May 17, 2024, the plaintiff, through counsel, sent an email to McDade regarding the administrative leave, asking for specific information about the allegations and the process that would be followed, and raising concerns that the administrative leave without any prior warning or issues raised potential discrimination issues. The respondent never responded to that correspondence.

25.  On May 23, 2024, the plaintiff received an email from McDade informing her that the investigation had been concluded and inviting her to a meeting to be held on the following day to discuss the outcome/next steps. The plaintiff had not been contacted by the defendant or any investigator during the time she had been out on administrative leave and she was not informed of the specific concerns nor provided with an opportunity to respond to the allegations.

26.  On May 24, 2024, the plaintiff was informed that her employment was being terminated as a result of the investigation findings. She requested a copy of the investigation report but was told that it would not be provided to her because it was private, confidential Teaching Lab information. The plaintiff was given a document titled Separation of Employment Notification which stated: "our investigation findings identified that you took actions while using your administrative access that were not

-5-

required to perform your job. Additionally, the investigation revealed that you attempted to perform an unauthorized Google Takeout; this action was attempted after you were placed on administrative leave." No further information was provided.

27.  These conclusions were false and the plaintiff was not provided with an opportunity to respond.

28. The investigation report, which was provided to the plaintiff's counsel on June 3, 2024, did not confirm that the plaintiff had engaged in any misconduct.  There were also errors in the report that could have easily been corrected or clarified if the plaintiff had been interviewed by the defendant or the investigator before she was fired.

29.     The reasons given by the defendant for its decision to terminate the plaintiff's employment are pretextual.

30. The plaintiff's employment was terminated by the defendant because of her disability, and because she raised concerns about disability discrimination.

## COUNT ONE  (ADA)

1.     The plaintiff hereby repeats, realleges and incorporates by reference paragraphs 1-30 above.

31.  By the conduct described above, the defendant has discriminated against the plaintiff because of her disability in violation of the ADA, 42 U.S.C. § 12112(a).

32.     The defendant's conduct as described above was undertaken with malice or reckless indifference to the federally protected rights of the plaintiff.

33.     Because of the defendant's illegal conduct, the plaintiff has suffered and continues to suffer a loss of compensation, benefits and other attendant rights, privileges and conditions of employment; loss of employment opportunities; and has

endured mental and emotional distress and other non-pecuniary losses.

## COUNT TWO (CFEPA)

1.      The plaintiff hereby restates, re-alleges and incorporates by reference paragraphs 1-33 above.

34.     By the above-described conduct, the defendant has discriminated against the plaintiff in violation of CFEPA, Conn. Gen. Stat. §46a-60(a)(1).

35.     Because of the defendant's illegal conduct, the plaintiff has suffered and continues to suffer a loss of compensation, benefits and other attendant rights, privileges and conditions of employment; loss of employment opportunities; and has endured mental and emotional distress and other non-pecuniary losses.

## COUNT THREE (ADA - RETALIATION)

1.      The plaintiff hereby restates, re-alleges and incorporates by reference paragraphs 1-35 above.

36.     By the acts and conduct described above, the defendant has retaliated against the plaintiff in violation of the ADA §12203.

37.     The defendant's conduct as described above was undertaken with malice or reckless indifference to the federally protected rights of the plaintiff.

38.     Because of the defendant's illegal conduct, the plaintiff has suffered and continues to suffer a loss of compensation, benefits and other attendant rights, privileges and conditions of employment; loss of employment opportunities; and has endured mental and emotional distress and other non-pecuniary losses.

**<u>COUNT FOUR</u> (CFEPA - RETALIATION)**

1.    The plaintiff hereby restates, re-alleges and incorporates by reference paragraphs 1-38 above.

39.    By the conduct described above, the defendant retaliated against the plaintiff in violation of Conn. Gen. Stat. §46a-60(a)(3).

40.    Because of the defendant's illegal conduct, the plaintiff has suffered and continues to suffer a loss of compensation, benefits and other attendant rights, privileges and conditions of employment; loss of employment opportunities; and has endured mental and emotional distress and other non-pecuniary losses.

## DEMAND FOR RELIEF

**WHEREFORE**, the plaintiff requests that this Court:

1.    Order the defendant to reinstate the plaintiff to the position she would have reached absent defendant's unlawful conduct or a substantially similar position;

2.    Order the defendant to cease and desist from discriminating against the plaintiff and other employees with disabilities;

3.    Order the defendant to make the plaintiff whole for all lost wages and benefits, with interest;

4.    Award the plaintiff compensatory damages;

5.    Award the plaintiff punitive damages;

6.    Award the plaintiff reasonable attorneys' fees and costs; and

7.    Award the plaintiff all other legal and equitable relief that the Court deems appropriate.

## REQUEST FOR TRIAL BY JURY

The plaintiff respectfully request a trial by jury as to all claims to which she is entitled.

THE PLAINTIFF,
Elizabeth Minton

By:    /s/ *Gregg D. Adler*

Gregg D. Adler ct05698
Mary E. Kelly ct07419
Livingston, Adler, Pulda, Meiklejohn
  & Kelly, P.C.
557 Prospect Avenue, 2nd Floor
Hartford, CT 06105
(860) 233-9821
gdadler@lapmk.org
mekellylapm@gmail.com